**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI,
SOUTHEASTERN DIVISION**

| | |
|---|---|
| AUGUST PORTER, ) | |
| ) | Cause No: |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| TERRY DUTY, in his individual ) | |
| and official capacity, ) | |
| ) | |
| MARK HIGGINS, in his individual ) | |
| and official capacity, ) | |
| ) | |
| STEPHEN GARNETT, an individual, ) | |
| ) | |
| CITY OF EAST PRAIRIE, MISSOURI, ) | |
| ) | |
| and ) | |
| ) | |
| A & M RENTAL AND ) | |
| CONSTRUCTION, LLC, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

NOW COMES Plaintiff August Porter, by his attorneys, and for his complaint against Terry Duty, Mark Higgins, Stephen Garnett, the City of East Prairie, Missouri, and A & M Rental and Construction, LLC, states as follows:

**INTRODUCTION**

1. This matter arises under violations of 42 U.S.C §1983 and violations of Missouri common law. On January 29, 2018, Defendant Terry Duty abducted and transported Plaintiff to Defendant A & M Rental and Construction, LLC. Defendant East Prairie Police Chief Mark Higgins escorted Defendant Terry Duty to A & M Construction, owned by Defendant Stephen Garnett. After Defendant Higgins got out of his vehicle, he handcuffed Plaintiff and dragged him

1

inside the lobby. Defendant Duty threatened to kill Plaintiff, then brutally beat Plaintiff with an ax while Defendant Higgins held Plaintiff and watched. After Defendant Duty left the scene, Defendant Higgins took Plaintiff, who was still handcuffed, to the East Prairie police station. Defendant Higgins held Plaintiff at the police station for half an hour before ultimately releasing Plaintiff without charging Plaintiff with a crime.

## JURISDICTION AND VENUE

2. Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4).

3. Plaintiff invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and decide Plaintiff's claims under Missouri state law.

4. Plaintiff's claim for attorney's fees and costs is authorized by 42 U.S.C. §1988.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant A & M Rental and Construction, LLC is a resident of this District and all events giving rise to this action occurred within the Eastern District of Missouri.

## PARTIES

6. Plaintiff August Porter is a citizen of the state of Missouri and resides in Mississippi County, Missouri.  Plaintiff is black.

7. Defendant Terry Duty is a citizen of the state of Missouri and resides in Mississippi County, Missouri. Defendant Duty is white. Plaintiff sues Defendant Duty in his individual capacity.

8. Defendant Mark Higgins is a citizen of the state of Missouri and resides in Mississippi County, Missouri. Defendant Higgins is white. Plaintiff sues Defendant Higgins in his individual and official capacity.

9. Defendant Stephen Garnett is a citizen of the state of Missouri and resides in Mississippi County, Missouri. Defendant Garnett is white.

10. Defendant City of East Prairie, MO is a Missouri municipal corporation with the capacity to sue and be sued. Its main offices are located at 219 North Washington Ave East Prairie, MO 63845.

11. Defendant A & M Rental and Construction, LLC is a Missouri business located at 411 E Washington St, East Prairie, MO 63845. Defendant A & M Rental and Construction is owned by Defendant Stephen Garnett.

### STATEMENT OF FACTS COMMON TO ALL COUNTS

12. On January 29, 2018, Plaintiff was walking to the Budget Laundry laundromat in East Prairie, Missouri when Defendant Terry Duty pulled his truck over and asked Plaintiff if he needed a ride.

13. Plaintiff initially declined Defendant Duty's offer. However, Duty told Plaintiff he needed to talk to him about something and again invited him into the car.

14. Plaintiff believed Defendant Duty wanted to talk about Plaintiff's brother, Rocket, since Defendant Duty knew Rocket in high school. Plaintiff had also known Defendant Duty a long time, so Plaintiff agreed and went inside Defendant Duty's truck.

15. Once Defendant Duty started driving, his friendly demeanor changed instantly. He accused Plaintiff of stealing money and items out of his wife's vehicle.

16. The truck doors automatically locked when Defendant Duty put the truck into drive, and began driving too fast for Plaintiff to get out of the vehicle.

17. Plaintiff did not understand why Defendant Duty accused him of stealing from his wife. Plaintiff did not know where Defendant Duty was taking him or what he was going to do with him. Plaintiff was terrified that Defendant Duty was going to seriously harm him or kill him.

18. Defendant Duty took out his phone and made a call. Plaintiff heard Defendant Duty say, "I've got him."

19. Defendant Duty drove to the Town & Country Supermarket, located at 523 E Washington St, East Prairie, MO 63845.

20. Right after Defendant Duty drove into the parking lot, Defendant East Prairie, MO Police Chief Mark Higgins pulled up beside them in a white SUV, well-known in East Prairie as Defendant Higgins' police car.

21. Defendant Higgins rolled down the window and told Defendant Duty to follow him. Defendant Higgins pulled away and Defendant Duty followed.

22. The stop was so brief, Plaintiff did not have a chance to escape. Further, once Defendant Higgins arrived, Plaintiff was afraid he would be shot if he tried to run.

23. The vehicles pulled into the Defendant A & M Rental and Construction, LLC workshop, which is located at 411 E Washington St, East Prairie, MO 63845. Defendant A & M Rental and Construction, LLC is a construction business owned by Defendant Stephen Garnett.

24. Defendant Higgins got out of the SUV. Defendant Higgins wore his police uniform, with his gun, East Prairie Police Department badge, and handcuffs fully visible.

25. Defendant Higgins approached Defendant Duty's truck. Defendant Higgins told Plaintiff he was under arrest for stealing.

26. Defendant Higgins placed handcuffs on Plaintiff with Plaintiff's hands in the front of his body.

4

27. Defendants Duty and Higgins walked toward the shop pushing Plaintiff in front of them. They all went inside the lobby.

28. Plaintiff looked at Defendant Higgins and said, "If you're going to arrest me, please just take me to jail. This doesn't look right. "Defendant Higgins responded, "Let's just hear what they have to say."

29. Through the glass doors of the shop, Plaintiff saw approximately six white adults, male and female, standing around a computer in the lobby.

30. Plaintiff was terrified. Defendant Duty accused him of stealing and Defendant Higgins told him he was under arrest. Plaintiff was worried the people in the lobby believed Defendant Duty and were there to kill him with Defendant Duty's help.

31. Plaintiff begged Defendant Higgins to take him to jail instead of going inside the shop. Defendant Higgins refused.

32. Defendants Higgins and Duty pulled Plaintiff into the lobby of A&M Construction.

33. Alex Smith, Katherine Hutchenson, Brittany Groves, Joe Randon, and one other individual, all white employees of A&M Construction, were inside the lobby. Defendant Duty's mother, a white woman, was also present.

34. Once inside the store, Defendant Duty told Plaintiff he had a videotape of Plaintiff stealing from his wife's car and told Plaintiff he needed to "fess up." Defendant Duty told Plaintiff, "Nobody's going to jail, we just want the stuff back."

35. Plaintiff said he did not do anything wrong and that he did not steal from anyone.

36. Defendant Duty became angrier. He turned to Plaintiff and slammed Plaintiff's head into the wall of the lobby. Defendant Higgins held Plaintiff down during the assault.

5

37. Defendant Duty told Plaintiff they would watch the video together. Defendant Duty played a surveillance video taken from the A&M Construction parking lot on the computer screen.

38. Plaintiff watched the video with Defendants Duty and Higgins and Defendant A & M Construction's employees. The computer screen showed camera footage of a black man in the A & M Construction parking lot walking by the shop. The video did not show a theft or a car break-in.

39. Plaintiff said the man in the video was him but said he did not steal from anyone.

40. Defendant Duty shouted, "Let's do this the way we used to. Let's take this nigger to the country and kill him."

41. The employees continued to stare at Duty, Higgins, and Plaintiff.

42. Defendant Duty told Defendant Chief Higgins to release Plaintiff and remove the handcuffs.

43. Defendant Chief Higgins did not remove the handcuffs and continued to hold Plaintiff down.

44. Plaintiff again begged Defendant Higgins to take him to the police station.

45. Defendant Duty looked at Defendant Higgins and said, "Fuck this, Peewee. If you're not going to do your job, I'll do your fucking job for you," and walked outside, to the shop's parking lot.

46. Defendant Higgins dragged Plaintiff outside the shop.

47. Everyone else followed Defendant Higgins outside.

48. Plaintiff tried to pull out of Defendant Higgins' grasp and escape. But, Defendant Higgins said, "Hold on, hold on," and pulled Plaintiff to Duty's truck.

6

49.     Plaintiff continued to beg Defendant Higgins to just take him to jail. Plaintiff feared for his life.

50.     Plaintiff watched Defendant Duty rummage in the back of his truck, worried he was retrieving a weapon.

51.     Defendant Duty took a fire-ax out of his truck and walked back to Plaintiff.

52.     Defendant Higgins held Plaintiff's handcuffed arms down while Plaintiff continued to beg Defendant Higgins to just take him to jail instead.

53.     Defendant Higgins held Plaintiff down while Defendant Duty swung the ax and struck Plaintiff in the face.

54.     Defendant Higgins released Plaintiff from his grasp but did not undo the handcuffs. Plaintiff was scared to run away. Plaintiff was afraid Defendants Higgins and Duty would kill him if he tried to run away since they were both armed.

55.     Plaintiff was in shock and in excruciating pain after Duty slammed the fire ax into his face.

56.      Defendant Higgins again told Plaintiff he was under arrest, dragged Plaintiff to his SUV, and put him in the back of the police car.

57.     Plaintiff was in a lot of pain.  But, he sat in back of the SUV and tried not to move. His facial wound continued to bleed.

58.     Defendant Duty went to his truck and left the scene.

59.     Defendant Higgins drove Plaintiff to the police station.

60.     Defendant Higgins told Plaintiff, "Listen man, this got out of hand. I'm going to give Terry time to cool off, otherwise you're going to go back there, and Terry will do something stupid. Defendant Higgins did not want Plaintiff to walk back by A & M Construction."

61. Since Plaintiff's handcuffs were on the front of his body, he was able to access his pockets to retrieve his phone. Plaintiff texted his girlfriend he was being taken to the police station and asked her to come get him.

62. Plaintiff also texted his friend Tim Cutlip and told him what happened. Mr. Cutlip and his wife then contacted the Highway Patrol.

63. After arriving at the police station, Defendant Higgins took Plaintiff to the interrogation room. Defendant Higgins did not remove the handcuffs.

64. Defendant Higgins did not offer Plaintiff medical care or treatment for the ax wound.

65. Plaintiff waited in the interrogation room for approximately twenty to thirty minutes before his girlfriend arrived.

66. A dispatcher and a police officer were also present at the police station that day.

67. Plaintiff's girlfriend arrived without her car. Plaintiff and his girlfriend did not have transportation, so they needed to walk to their apartment.

68. Defendant Higgins told Plaintiff and his girlfriend he would drive them to their house. He told Plaintiff he should not walk by A&M again.

69. Plaintiff was afraid to walk by A&M again. Plaintiff also worried that Defendant Duty would find him and try to kill him like he threatened to. Plaintiff felt he had no choice but to ride with Defendant Higgins.

70. While in the car, Defendant Higgins told August, "You're a black guy. You were wearing the same clothes as that guy in the video. When we see you, what do you think?"

71. Defendant Higgins tried to justify the assault, but the video Plaintiff saw did not show Plaintiff breaking into the car. Defendant Higgins had no reason to believe Plaintiff broke into the car other than an assumption Plaintiff broke into the car because he is black.

72. Plaintiff grew even more upset, jumped out of the moving SUV, and walked home the rest of the way.

73. Once Plaintiff left the vehicle, Defendant Chief Higgins told Plaintiff's girlfriend, "He needs to be careful before someone kills him."

74. Plaintiff was in pain. Plaintiff immediately went to Missouri Delta Medical Center in Sikeston, Missouri to treat his injury.

75. On Plaintiff's way to the hospital, an officer with Highway Patrol called Plaintiff to discuss what happened. Plaintiff told the officer to meet him at the hospital.

76. Plaintiff's injury, a facial laceration, was painful and required stitches. The doctor at Delta Medical Center stitched up the injury after Plaintiff arrived.

77. Three highway patrol officers, including Officer David Patton, met Plaintiff at the hospital to begin an investigation.

78. Several days later, Defendant Higgins attempted to call Plaintiff. Defendant Higgins also left messages for Plaintiff through Plaintiff's friends claiming he wanted to apologize to Plaintiff.

79. Approximately one month after the incident, Plaintiff met with Officer Patton again.

80. During the investigation, investigators reviewed a surveillance video of the assault from Defendant A & M Construction.

9

81. Officer Patton also arranged a recorded phone call on February 20, 2018 with Defendant Higgins.

82. During the call, Defendant Higgins admitted to holding Plaintiff down while Defendant Duty struck him with the ax.

83. Defendant Duty admitted to the Highway Patrol officers that he hit Plaintiff in the face with the ax.

84. Missouri State Highway Patrol arrested Defendant Duty and charged him with first-degree assault and armed criminal action in relation to this incident. Defendant Duty plead not guilty to these charges. Criminal charges against Defendant Duty are currently pending.

85. Defendant Higgins did not face criminal charges relating to this incident, and he is still employed by the East Prairie Police Department.

86. The events described caused Plaintiff pain, humiliation, and mental anguish.

87. Defendants Duty and Higgins degraded Plaintiff, dragged Plaintiff around East Prairie in handcuffs, held Plaintiff down, threatened to kill Plaintiff, and attacked Plaintiff. Plaintiff did not have the means or ability to protect himself. A group of white spectators watched and did nothing.

88. Plaintiff is terrified of and mistrusting of police. This fear has pervaded Plaintiff's everyday life. Plaintiff is afraid of all potential encounters with police, no matter how minor they are. Plaintiff fears his life would be in danger even for minor traffic violations.

89. Plaintiff also suffered medical injuries as a result of Defendants' conduct.

90. Defendants were undertaken without justification and without provocation by Plaintiff.

91. Defendants undertook these actions with malice and with deliberate indifference to Plaintiff's rights.

### VIOLATIONS OF LAW

### COUNT I: 42 U.S.C. § 1983 - Unlawful Seizure
*Against Defendants Higgins and Duty, in their individual and official capacities, and City of East Prairie, MO*

92. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

93. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department.

94. At all relevant times herein, Defendant Higgins, the East Prairie Police Chief, prescribed Defendant Duty authority to act under color of law in furtherance of Defendant City of East Prairie, MO's policies and practices.

95. As described above, the intentional detention and interrogation of Plaintiff by Defendants Duty and Higgins constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution.

96. The intentional detention and interrogation of Plaintiff was conducted pursuant to East Prairie Police Department's official and/or unofficial policies, customs, or practices that violate the Fourth Amendment to the United States Constitution.

97. As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

### COUNT II: 42 U.S.C. § 1983 - Excessive Force
*Against Defendants Higgins and Duty, in their individual and official capacities, and City of East Prairie, MO*

98. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

99. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department.

100. At all relevant times herein, Defendant Higgins, the East Prairie Police Chief, prescribed Defendant Duty authority to act under color of law in furtherance of Defendant City of East Prairie, MO's policies and practices.

101. As described above, Defendant Higgins' intentional use of force and the amount of force used against Plaintiff was unreasonable and excessive under the circumstances.

102. As described above, Defendant Duty's intentional use of force and the amount of force used against Plaintiff was unreasonable and excessive under the circumstances. .

103. The excessive and unreasonable use of force against Plaintiff was conducted pursuant to East Prairie Police Department's official and/or unofficial policies, customs, or practices that violate the Fourth Amendment to the United States Constitution.

104. The excessive and unreasonable use of force was conducted pursuant to Defendant City of East Prairie's official and/or unofficial, customs or practices that violate the Fourth Amendment to the United States Constitution.

105. As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

### COUNT III: 42 U.S.C. § 1983 - Failure to Intervene
*Against Defendant Higgins in his individual and official capacity*

106. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

107. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority as given to him by Defendant City of East Prairie on behalf of the East Prairie Police Department.

108. At all relevant times herein, Defendant Higgins, the East Prairie Police Chief, prescribed Defendant Duty authority to act under color of law in furtherance of Defendant City of East Prairie, MO's policies and practices.

109. As described above, Defendant Duty's use of force against Plaintiff was unreasonable and excessive under the circumstances.

110. Defendant Higgins, as East Prairie Police Chief, had a duty to intervene and protect Plaintiff from being subject to unreasonable seizure and the use of unreasonable and excessive force, but failed to do so.

111. Defendant Higgins as East Prairie Police Chief had a reasonable opportunity to intervene to prevent Defendant Duty from subjecting Plaintiff to unreasonable seizure and the use of unreasonable and excessive force but failed to do so.

112. As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

**COUNT IV: 42 U.S.C. § 1983 – Conspiracy**
*Against Defendants Higgins and Duty, in their individual and official capacities, and Garnett and A&M Construction*

113. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

114. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department.

115. At all relevant times herein, Defendant Higgins, the East Prairie Police Chief, prescribed Defendant Duty authority to act under color of law in furtherance of Defendant City of East Prairie, MO's policies and practices.

116. Defendants Higgins, Duty, Garnett, and A&M Construction conspired to deprive Plaintiff of his constitutional rights to be free from unreasonable seizures and excessive force.

117. There was a mutual understanding between Defendants and Defendants shared a common goal to deprive Plaintiff of his constitutional rights and conspire against Plaintiff to cause him harm.

118. As described above, there was a meeting of the minds between Defendants to seize Plaintiff and use unreasonable force upon Plaintiff to cause Plaintiff harm.

119. In furtherance of this conspiracy, as described above, Defendant Higgins assisted in unlawfully seizing Plaintiff and assaulting and battering Plaintiff with excessive force.

120. In furtherance of this conspiracy, as described above, Defendant Duty assisted in unlawfully seizing Plaintiff and assaulting and battering Plaintiff with excessive force.

121. In furtherance of this conspiracy, as described above, Defendants Garnett and A&M Construction knowingly provided Defendants Duty and Higgins use of its property to unlawfully seize Plaintiff and assault and batter Plaintiff with excessive force.

122. As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

### COUNT V: 42 U.S.C. § 1983 – Equal Protection
*Against Defendants Higgins and Duty, in their individual and official capacities, and City of East Prairie, MO*

123. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

124. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department.

125. At all relevant times herein, Defendant Higgins, the East Prairie Police Chief, prescribed Defendant Duty authority to act under color of law in furtherance of Defendant City of East Prairie, MO's policies and practices.

126. As described above, Defendants Higgins and Duty denied Plaintiff equal protection of the law in violation of his rights under the Fourteenth Amendment of the Constitution of the United States.

127. The misconduct described in this Count was motivated by racial animus and constituted purposeful discrimination.

128. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

129. The misconduct described in this Count was undertaken by Defendant Higgins within the scope of his employment and under color of law such that his employer, Defendant City of East Prairie, MO is liable for their actions.

130. The misconduct described in this Count was undertaken by Defendant Duty under color of law such that Defendant City of East Prairie, MO is liable for his actions.

131. The misconduct described in this Count was undertaken pursuant to the City of East Prairie, MO's official and/or unofficial policies, customs, or practices that violate the Fourteenth Amendment to the United States Constitution.

132. As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

## COUNT VI: Failure to Properly Hire, Train, Supervise, Control and Discipline Defendant Higgins
*against City of East Prairie, MO*

133.  Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

134.  That Defendant City of East Prairie hired Defendant Higgins to serve as the Police Chief of East Prairie, Missouri

135.  At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department as granted to him by Defendant City of East Prairie.

136.  In hiring Defendant Higgins to serve as East Prairie's Police Chief, and giving him authority over the Police Department and the citizens of the City of East Prairie the Defendant City of East Prairie failed to follow adequate screening and hiring practices for the employees of its Police Department and provide adequate, training, supervision control or discipline to the employees of its Police Department.

137.  That in doing so, Defendant City of East Prairie, was deliberately indifferent to the rights of others such that its failure to properly screen, hire, train, control, supervise and discipline the employees of its Police Department, including Defendant Higgins, reflects a deliberate or conscious choice by Defendant City of East Prairie.

138.  That these failures by the City of East Prairie were conducted pursuant to Defendant East Prairie's official and/or unofficial policies, customs, or practices that violate the Fourth and Fourteenth Amendments to the United States Constitution.

139.  The deficiencies in Defendant City of East Prairie's screening, hiring, training, Control and supervision of employees directly caused harm and damages to Plaintiff.

### COUNT VII: Failure to Investigate and Act
### on the Pattern of Transgressions by Defendant Higgins
*against City of East Prairie, MO*

140. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

141. That Defendant City of East Prairie hired Defendant Higgins to serve as the Police Chief of East Prairie, Missouri

142. At all relevant times herein, Defendant Higgins acted under color of law as the East Prairie Police Chief with final policy and decision-making authority on behalf of the East Prairie Police Department as granted to him by Defendant City of East Prairie.

143. That Defendant City of East Prairie should have known that the acts of Defendant Higgins were part of a pattern of transgressions whereby Defendant Higgins regularly violated the rights of the citizens of Defendant City of East Prairie.

144. That Defendant City of East Prairie failed to and continues to fail to investigate and act on complaints regarding Defendant Higgins.

145. That Defendant City of East Prairie had knowledge that Defendant Higginswas conducting a widespread and persistent pattern of unconstitutional behavior

146. That Defendant City of East Prairie deliberately failed to take remedial action to discipline and/or terminate Defendant Higgins.

147. That Defendant City of East Prairie's failure to investigate Defendant Higgins pattern of known transgressions and discipline or terminate him caused direct harm and damages to Plaintiff.

### COUNT VIII: Premises Liability
*Against Defendants A&M Construction and Stephen Garnett*

148. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

149. Defendant A & M Construction is owned and operated by Defendant Garnett.

150. At all relevant times herein, Defendants Garnett and A&M Construction controlled the space in which Defendants Higgins and Duty met with Plaintiff.

151. Defendants Higgins and Duty forcibly took Plaintiff to the location of Defendant A& M Construction, with Defendant Garnett and Defendant A&M Constructions knowledge and permission, such that Plaintiff was an invitee on said property.

152. Defendants Garnett and A&M Construction knew of the conditions and risks presented to Plaintiff on the property.

153. Defendants Garnett and A&M Construction could have prevented the risks presented to Plaintiff on the property but failed to do so.

154. Defendants Garnett and A&M Construction failed to use ordinary care to eliminate these harmful conditions and risks to Plaintiff.

155. Defendants Garnett and A&M Construction failed to use ordinary care to warn Plaintiff of these conditions and risks.

156. Defendants Garnett and A&M Construction failed to contact emergency or response personnel after Plaintiff sustained injuries.

157. Defendants Garnett and A&M Construction expressly allowed Defendants Higgins and Duty to use its space to harm Plaintiff and were completely indifferent to and consciously disregarded Plaintiff's safety.

158. Defendants Garnett and A&M Construction were thereby negligent.

As a direct and proximate result of these actions, Plaintiff has suffered harm and damages.

**PRAYER FOR RELIEF**

159. Plaintiff requests compensatory damages against Defendants in an amount to be determined at trial, punitive damages against Defendants in an amount to be determined at trial, attorney's fees and costs, and such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

160. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

By: */s/ Sarah Jane Hunt*
Thomas E. Kennedy, III
Sarah Jane Hunt
MaryAnne Quill
**KENNEDY HUNT, P.C.**
906 Olive St., Ste. 200
St. Louis, MO, 63101
314-872-9041 telephone
314-872-9043 fax
tkennedy@kennedyhuntlaw.com
sarahjane@kennedyhuntlaw.com
mquill@kennedyhuntlaw.com