UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AUGUST PORTER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20 CV 106 ACL |
| TERRY DUTY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff August Porter filed this action against Defendants Terry Duty; Mark Higgins; Stephen Garnett; City of East Prairie, Missouri; and A&M Rental and Construction, LLC, alleging violations of his constitutional rights resulting from an incident on January 29, 2018. Presently pending before the Court is Defendant City of East Prairie, Missouri's ("City") Motion to Dismiss. (Doc. 37.) The Motion is fully briefed and ripe for disposition.

## Background

In his Amended Complaint, Plaintiff sets forth ten counts. The first nine counts allege violations under 42 U.S.C. § 1983, as follows: (1) unlawful seizure against Defendants Higgins, Duty, and City; (2) excessive force against Defendants Higgins, Duty, and City; (3) equal protection against Defendants Higgins, Duty, and City; (4) conspiracy against Defendants Higgins, Duty, City, Garnett and A&M Construction; (5) failure to intervene against Defendants Higgins and City; (6) failure to obtain or provide proper medical care against Defendants Higgins and City; (7) failure to train against Defendant City; (8) failure to supervise, control, and discipline against Defendant City; and (9) failure to investigate against Defendant City. (Doc. 34.) Count X alleges a state law premises liability claim against Defendants A&M Rental and

1

Construction, LLC ("A&M") and Garnett.  *Id*.

The Amended Complaint alleges the following relevant facts:

On January 29, 2018, Defendant Duty abducted Plaintiff Porter while he was walking in East Prairie, Missouri, and transported him to Defendant A&M, a business located in East Prairie owned by Garnett.  Porter and Duty are both private citizens; Porter is black, and Duty is white. Porter claims that Defendant Higgins, the East Prairie Police Chief and City Marshal, escorted Duty to A&M Construction in his police vehicle.  After Higgins arrived at A&M, he arrested and handcuffed Porter before dragging him inside the lobby of the business.  Higgins was wearing his law enforcement uniform, with his gun, East Prairie Police Department badge, and handcuffs visible.  Once inside the store, Duty told Porter he had a videotape of Porter stealing from Duty's wife's car and told Porter he needed to "fess up."  Duty played a surveillance video taken from the A&M parking lot, which showed a black man walking by the business, but did not show a theft.  Porter admitted that the man in the video was him, but stated that he did not steal from anyone.  Duty made racial slurs directed at Porter, struck his head against the wall, threatened to kill him, and struck him in the face with an ax, while Higgins assisted by restraining Porter. After Duty left the scene, Higgins transported Porter, who was still handcuffed, to the East Prairie police station.  Higgins did not obtain medical treatment for Porter's visible injuries. Instead, Higgins held Porter at the police station for half an hour, before ultimately releasing him.  After releasing Porter, Higgins stated to Porter:  "You're a black guy.  You were wearing the same clothes as that guy in the video.  When we see you, what do you think?"  After leaving Higgins, Porter immediately went to Missouri Delta Medical Center in Sikeston, Missouri, where he received stitches for a facial laceration.  The Missouri State Highway Patrol conducted an investigation of the incident, during which they reviewed a surveillance video of the assault and

interviewed Higgins and Duty. Higgins admitted to holding Porter down while Duty struck him with the ax, and Duty admitted that he hit Porter in the face with the ax. The Missouri State Highway Patrol arrested Duty and charged him with first-degree assault and armed criminal action in relation to this incident. Criminal charges against Duty are currently pending. Higgins was never charged with a crime arising from the incident. (Doc. 34 at pp. 1-12.)

Defendant City filed the instant Motion to Dismiss Counts I through IX pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Plaintiff fails to allege that the City had a policy, custom, or practice that would subject it to liability under 42 U.S.C. § 1983. Plaintiff opposes Defendant's Motion to Dismiss.

## **Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.*

at 555-56; Fed. R. Civ. P. Rule 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## **Discussion**

Defendant argues that all of Plaintiff's claims against it should be dismissed because Plaintiff failed to adequately allege that a constitutional violation was committed pursuant to an official custom, policy, or practice of the City.  Defendant further argues that Plaintiff fails to allege facts sufficient to state a claim that the City failed to train, supervise, control, and discipline its officers.  As such, Defendant contends that Counts XII and XIII should be dismissed on this additional basis.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Section 1983 liability attaches to a governmental entity only if a plaintiff shows that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

### I.    Policy or Custom

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  A "custom" can be shown through evidence of

4

the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." *Id.*

### A. Policy

The Amended Complaint alleges that the City "knew or should have known" what Higgins and Duty did to Plaintiff at A&M, as Higgins "openly admitted what happened to Plaintiff when questioned by the Missouri State Highway patrol investigating officer and his admission was contained within their report on the incident." (Doc. 34 at p. 11.) Plaintiff alleges that the City did not take any action to investigate Higgins regarding his violation of Plaintiff's civil rights, nor did the City discipline or re-train Higgins or any of its employees due to the incident. *Id.* In failing to so investigate or discipline, Plaintiff alleges that the City did not follow its own policies and procedures. *Id.* Plaintiff contends that the City's failure to follow its policies and procedures "created a culture and custom whereby its employees, agents and officers knew that they would not suffer any consequences for violating the civil rights of any citizen, including Plaintiff." *Id.*

Plaintiff argues in the alternative that the City "had no policies and procedures in place that would prevent Defendant Higgins and its employees from violating the civil rights of its citizens, and this lack of policies and procedures shows it was defendant City's Police Department's culture and custom to violate the civil rights of its citizens, including Plaintiff." *Id.* at p. 11-12. This lack of policies and customs directly led to Higgins' actions "in that he knew he could violate the civil rights of Plaintiff without any consequences for doing so." *Id.* at 12.

Defendant argues that Plaintiff does not allege the existence of an official policy in place on or before the date of the alleged occurrence, but only sets out allegations regarding the City's post-occurrence actions or inactions. Defendant further argues that Plaintiff fails to allege facts

5

showing that the City had a widespread custom or practice of violating the Fourth and Fourteenth Amendment rights of persons similarly situated.

The undersigned agrees that Plaintiff has failed to allege facts sufficient to state a claim that the City had an unconstitutional official policy. The Amended Complaint does not allege the existence of an official policy in place on or before the incident at issue. Instead, Plaintiff cites to the City's actions or inactions after the incident at issue as evidence of its policies. "Generally, an isolated incident of alleged police misconduct, such as [Plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted). Plaintiff's allegations regarding the City's unconstitutional policies do not state a plausible claim that the City had an unconstitutional official policy prior to the incident at issue in this case.

### B.  Custom

Plaintiff next argues that the City had an unconstitutional custom of violating citizens' civil rights. To establish liability based on a "custom," Plaintiff must demonstrate: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that conduct; and (3) that the plaintiff was injured by acts pursuant to the governmental entity's custom…" *Brown v. City of St. Louis, Missouri,* 4:18CV1676 JMB, 2019 WL 3577491, * 4 (E.D. Mo. Aug. 6, 2019).

The Amended Complaint contains the following allegations regarding the City's unconstitutional customs:

> Defendant City has history of policies and procedures and/or a culture and custom of allowing its City Marshal and other officers, employees, and agents to violate

6

> the civil rights of members of the public.  This is evidenced by Defendant City's former Police Chief and City Marshal, Danny Lafferty, and other law enforcement personnel of Defendant City who have been accused of civil rights violations in the past without consequence.
>
> It was and is Defendant city's custom and or unofficial policy of inaction to 'look the other way' and ignore when its law enforcement officers violate the civil rights of its citizens, including Plaintiff.

(Doc. 34 at 12.)

For the purposes of the instant Motion to Dismiss, Plaintiff has set forth enough facts to support a claim of custom liability.  At the motion to dismiss stage, the pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 555.  To state a claim under § 1983 against a political subdivision, a plaintiff must allege an act performed under color of state law that resulted in a constitutional injury, and must identify either an official policy or a widespread custom or practice of the political subdivision that provided the moving force behind the unconstitutional act and the plaintiff's resulting injury.  *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998).

In this case, Plaintiff has alleged that Higgins, as Police Chief and City Marshal of the City and acting under color of state law, seized and assaulted Plaintiff in violation of Plaintiff's Fourth and Fourteenth Amendment rights.  Plaintiff describes an incident in which Higgins held Plaintiff down while Duty—a private citizen—struck Plaintiff's head against a wall, made racial slurs, threatened to kill him, and brutally beat him with an ax.  Higgins then took Plaintiff to the East Prairie Police Station and held him there for a half an hour without obtaining any medical treatment for Plaintiff's serious injuries.  The Missouri State Highway Patrol filed criminal charges against Duty after investigating the incident.

7

Accepting Plaintiff's factual allegations as true, Higgins' actions clearly violated Plaintiff's constitutional rights.  Plaintiff alleges that Higgins' conduct was consistent with and caused by the custom of the City to permit such constitutional violations, and that City law enforcement officers have violated citizens' constitutional rights in the past without incident. *See Williams v. Cty. of Scotts Bluff*, No. 7:05CV5018, 2005WL3159661, at * 5 (D. Neb. Nov. 28, 2005) (although allegations insufficient to show policy, they can "be construed to allege a continuing, widespread, persistent pattern of unconstitutional misconduct by [] law enforcement officers," which stated a claim against municipality).  While Plaintiff will need to establish further factual support for his claims to survive summary judgment, his allegations are enough to overcome Defendant's Motion to Dismiss.

**II.     Failure to Train or Supervise**

To state a claim under § 1983 for failure to train or supervise, Plaintiff must plead facts sufficient to demonstrate that, (1) the City's police officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate or conscious choices; and (3) the City's training and supervision deficiencies caused Plaintiff's constitutional deprivation.  *See Ulrich*, 715 F.3d at 1061 (citation omitted).

In Count VII, Plaintiff asserts a failure to train claim against the City.  He alleges that the City supervised and had control over Higgins as the City Marshal, and that the City gave Higgins final policy and decision-making authority.  Plaintiff alleges that the City "failed to provide adequate training regarding civil rights to the employees/agents of its Police Department to prevent its employees/agents from violating the civil rights of Plaintiff."  (Doc. 34 at 22.)  In doing so, Plaintiff contends that the City was deliberately indifferent to the rights of others.

8

Plaintiff alleges that the deficiencies in the City's training of Higgins and other employees/agents of its Police Department regarding civil rights directly caused harm and damages to Plaintiff.

In Count VIII, Plaintiff alleges that Defendant failed to supervise, control, and discipline Higgins.  He states that the City "knew or should have known that the acts of Defendant Higgins and its other employees/agents of its Police Department were part of a widespread and persistent pattern of transgressions whereby they regularly violated the civil rights of the citizens of Defendant City."  (Doc. 34 at 23.)  Plaintiff states that the City "failed and continues to fail to supervise or control and/or inadequately supervised or controlled Defendants Higgins and the other employees/agents of its Police Department."  *Id.*  The City instead "facilitated, approved, condoned or turned a blind eye to Defendant Higgins' and its other employees/agents' civil rights violations," and continues to fail to investigate Plaintiffs' or other citizens' complaints regarding Higgins and other employees'/agents' violation of citizens' civil rights.  *Id.*  Plaintiff contends that the City failed to take remedial action to discipline or terminate Higgins or any other employee/agent for their violation of Plaintiff's and other citizens' civil rights.  *Id.*

The Court finds that Plaintiff has pled sufficient facts to state a plausible claim that there were deficiencies in training and supervision of which the City was aware that caused Plaintiff's constitutional rights to be violated.  Whether Plaintiff can prove these claims is a question that will be determined later.  The Court declines to dismiss Grounds VII and VIII at this time.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 37) is **denied**.

>*/s/ Abbie Crites-Leoni*
>ABBIE CRITES-LEONI
>UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of November, 2020.

9